UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
UNITED STATES OF AMERICA,                     :
                                              :
            - v. -                            :         07 Cr. 541 (RPP)
                                              :         12 Civ. 118 (RPP)
DANIEL B. KARRON                              :
                                              :
            Defendant.                        :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### RULE 41(g) MOTION FOR RETURN OF PROPERTY AND
### DEFENDANT'S CORRECTED SURREPLY IN SUPPORT OF HER 2255 MOTION


                                    PREET BHARARA
                                    United States Attorney for the
                                    Southern District of New York
                                    Attorney for the United States
                                         of America


Chi T. Steve Kwok
Christian R. Everdell
Assistant United States Attorneys

        - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
UNITED STATES OF AMERICA,                 :
                                          :
             - v. -                       :      07 Cr. 541 (RPP)
                                          :      12 Civ. 118 (RPP)
DANIEL B. KARRON                          :
                                          :
             Defendant.                   :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### RULE 41(g) MOTION FOR RETURN OF PROPERTY AND
### DEFENDANT'S CORRECTED SURREPLY IN SUPPORT OF HER 2255 MOTION

The Government respectfully submits this Response to (1) defendant Daniel B. Karron's motion under Fed. R. Crim. P. 41(g) for the return of property seized from her apartment more than four years ago; and (2) the defendant's "corrected surreply" in further support of her § 2255 motion to set aside the judgment of conviction. For the reasons set forth below, both motions are meritless and should be denied.

**I.    Rule 41(g) Motion**

Under Fed. R. Crim. P. 41(g), "a person aggrieved by an unlawful search and seizure of property . . . may move for the property's return." Fed. R. Crim. P. 41(g). On or December 23, 2011, the defendant filed a motion under Rule 41(g) seeking the return of various items seized by federal agents from her apartment on June 26, 2007, pursuant to a seizure warrant signed by Magistrate Judge Douglas E. Eaton on or about June 19, 2007. For the reasons set forth below, this motion is meritless.[1]

---

[1]    On January 5, 2012, the Court issued an Order directing that the defendant's Rule 41(g) Motion be stricken from the criminal docket and be filed under a new civil action, which now bears the docket number 12 Civ. 118 (RPP). Furthermore, on January 18, 2012, this Court

The seizure warrant[2] was issued under the authority of 18 U.S.C. § 981(a)(1)(C), which permits the seizure of "property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specific unlawful activity.'" 18 U.S.C. § 981(a)(1)(C). "Specific unlawful activity" includes "an offense under . . . section 666 [of Title 18, United States Code]" — the same federal criminal statute under which the defendant was later convicted at trial. 18 U.S.C. § 1956(c)(7)(D). Finding that the Government had shown sufficient probable cause that the items that were the subject of the warrant application were purchased with federal grant funds in an unauthorized manner, Judge Eaton issued the warrant. After the seizure was conducted on June 26, 2007, federal agents created an inventory listing the specific items that were seized pursuant to the warrant, and a copy was promptly provided to defense counsel. (A copy of the inventory is attached hereto as Exhibit B). In addition, on June 27, 2007, an agent involved in the seizure returned the warrant, along with the inventory, before Magistrate Judge Gabriel W. Gorenstein.

Notwithstanding the defendant's belated claim — more than four years after-the-fact — that the seizure was unlawful and/or included items that should not have been seized, at no point while the criminal action was pending before this Court did the defense move to suppress any of the seized evidence. In fact, during the trial in the criminal action, the inventory

---

issued an Order directing the civil action be dismissed if the defendant continues to fail to pay the requisite filing fee, or to file for leave to proceed in forma pauperis, within 30 days of the Court's Order. As of the date of this Response, the defendant has still not cured that filing defect.

[2] An unsigned version of the Affidavit and the related criminal docket sheet are attached hereto as Exhibit A. The official, signed versions of the Affidavit and Warrant are on file with the Court's Clerk. The Clerk's Office has advised the Government that these signed documents are now stored in the Court's vault and would be released only pursuant to a Court Order.

2

of seized items was introduced into evidence as Government Exhibit 120, pursuant to a stipulation that was read into the record. See Trial Tr. 557-559. In addition, certain physical items seized from the defendant's apartment — including a shoe rack, power tools, projector screens, etc. — were published to the jury. Id. 556-59.

In light of the above, any claim about the lawfulness of the search and seizure at the defendant's apartment is waived. The defendant makes no attempt to explain why she waited more than four-and-a-half years — after the deadline for the filing of any pretrial suppression motion, after trial, after sentencing, after an unsuccessful direct appeal to the Second Circuit, after the denial of her petition for a writ of certiorari to the Supreme Court, and after the filing of her § 2255 motion — to file the instant Rule 41(g) motion, when the items in question had long been discarded, requisitioned for other productive uses, or otherwise disposed of.

Furthermore, the defendant does not allege that the warrant was defective or explain how the search and seizure was "unlawful" — the prerequisite to seeking relief under Rule 41(g). Unlike a search warrant where evidence was seized purely for its evidentiary value for use at a criminal proceeding, such that the items (so long as they are not contraband) could be returned after the case is over, the warrant at issue here is a seizure warrant. In other words, items were seized, not simply for their evidentiary value for use at trial, but because they were forfeitable as the proceeds of criminal activity. See 18 U.S.C. § 981. Having been convicted of misapplying federal funds in part based on her unauthorized purchase of the seized items using federal grant funds, the defendant can hardly be heard to seek the return to her of those very items to which she had no right of ownership.

The defendant also asserts, citing Document No. 43 in Docket 07-Cr-541 (filed May 22, 2008), that a lien was wrongfully "placed on the [defendant's] apartment by the

3

Government." See Motion at 5.  The defendant neglected to mention that, on November 26, 2007, she entered into a "Stipulation and Order" with the Government (attached hereto as Exhibit C), approved by the Court on the same day, agreeing to have a lien placed on her property in part to reimburse the Government for duplicating her computer hard drives to ensure the complete retrieval of all potentially exculpatory materials and, upon the sale of the property, to remit the proceeds to the United States Marshals Service.  In addition, the defendant waived "all rights to appeal or to otherwise challenge or contest the validity of this Stipulation and Order."  A few months later, in May 2008, the Order was modified to allow the defendant to pay her attorney's fees from the proceeds of the sale of her condominium — an action that the defendant also agreed to in open court.  (See Letter from Ronald Rubinstein, dated May 21, 2008, attached hereto as Exhibit D).

Hence, even assuming that this claim about the misplaced lien is properly before this Court — and the Government submits it is not — it is meritless because the defendant has repeatedly waived any challenges to it.  Furthermore, any liens placed on the defendant's assets and property, and any funds held for potential forfeiture, are all the more appropriate in light of the $4 million civil judgment that Judge Buchwald imposed on the defendant last year under the False Claims Act based on the same conduct that formed the basis of the criminal prosecution. See 08-Civ-10223, Document No. 37.

For all the foregoing reasons, the defendant's Rule 41(g) motion should be denied.

II. **Defendant's "Corrected Surreply"**

Most of the defendant's § 2255 arguments in her "corrected surreply" have already been addressed in the Government's initial Memorandum of Law, filed on July 15, 2011 ("Gov't Memo").  In this Response, the Government discusses only two issues raised in the

4

defendant's latest submission: (1) the purported Brady violations; and (2) her claim of actual innocence.

### A. Brady Claims

As a preliminary matter, as the Government pointed out in its July 15 Memorandum of Law, the purported Brady claims are procedurally defaulted. See Gov't Memo at 17-20. But even assuming that were not the case, none of the defendant's sweeping assertions of Government misconduct have any basis in reality. In her corrected surreply, the defendant appears to point to two pieces of evidence that the Government allegedly improperly destroyed or withheld: (1) correspondence between the defendant and grant administrator Hope Snowden (Motion at 3); (2) an affidavit by one of the defendant's friends, Lee H. Goldberg, that was purportedly "exculpatory." (Motion at 10-11). Neither of these claims withstands scrutiny.

First, with respect to the correspondence with Ms. Snowden, the defendant cites snippets from the trial transcript that purportedly show that Snowden destroyed evidence favorable to the defense. See Motion at 3 (citing Trial Tr. 420-24, attached hereto as Exhibit E). A reading of the trial transcript shows nothing of the sort. Snowden testified that, while the grant was in progress, the defendant kept sending her financial status reports that were "inconsistent and inaccurate." Trial Tr. 419. As a result, the defendant constantly had to correct these deficiencies and inconsistencies by sending in new, corrected reports that replaced the old and unsatisfactory ones. Id. at 420. This required Snowden to update the file by replacing the "old form" with the "new form." Id. Although the financial status report that defense counsel showed the witness — Government Exhibit 42 (see Trial Tr. 422) — did not contain the correspondence between Snowden and the defendant relating to these requests for revisions, Snowden testified that she kept such materials in the original grant file. (Trial Tr. 423-24). Hence, while Snowden

5

might not have kept every piece of paper that was generated in the course of administering the grant and might have "discarded" certain old forms that were subsequently superseded by new forms in the regular course of business, Snowden testified that she preserved much of her correspondence with the defendant, which she kept in the original grant file. (Tr. 424).

Although not everything in the original grant file was marked as a Government Exhibit and introduced as evidence at trial, the Government produced to the defense in the course of discovery "correspondence between CASI and the administrator of the grant" that bear Bates-stamp numbers 89-128 — precisely the type of correspondence that Snowden referred to in her testimony. In addition, in a discovery letter dated August 8, 2007 (a copy of which was attached to the Government's July 16, 2011 Memorandum), the Government alerted defense counsel that it was in possession of the entire original grant file, which the defense was free to inspect — an opportunity that the defense did not avail itself even after Snowden took the witness stand. This is not the least bit surprising for the simple reason that the defense had no reason to believe — and rightly so — that anything exculpatory would be found in the file, as already confirmed by a "thorough[]" review of the grant file conducted by Special Agent Rachel Ondrik. See Rachel Ondrik's Declaration, dated July 15, 2011.[3]

---

[3] Moreover, this claim is procedurally barred under the defendant's own theory. To the extent the defendant now argues that Snowden admitted, on the witness stand, to destroying evidence with a nefarious purpose that gave rise to a Brady violation, the defense was on notice at that point. However, neither defense counsel at trial, nor appellate counsel on appeal, raised a claim of Brady violation. The reason they did not, the Government respectfully submits, is because experienced counsel knew the claim is frivolous, premised upon a gross misreading and distortion of Snowden's trial testimony. In any event, the defendant's Brady claim fails on its own terms because if, as the defendant now argues, Snowden admitted to destroying evidence giving rise to a Brady claim when she testified, there can be no good "cause" why a Brady claim could not have been asserted right then and there before this Court, or at the very least, raised on direct appeal. Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010).

In her corrected surreply, the defendant offers nothing beyond hyperbole, conclusory allegations, and misleading citations to the trial transcript to suggest otherwise. Under even the broadest reading of Brady and its progeny, there can be no claim of Government misconduct where, as here: (1) the Government made copies of, and produced to defense, the most pertinent documents that may be introduced as evidence at trial; (2) conducted a thorough review of all files, specifically with an eye toward uncovering discoverable materials, and found nothing exculpatory; (3) alerted defense counsel of the existence of all pertinent files and made them available for inspection to confirm the Government's representations, both before trial and during trial; (4) paid for the imaging of the defendant's computer hard drives to ensure the complete recovery of all e-mails, files, records not already maintained in the agency's files (see 11/7/2007 Order, Docket No. 21). Most decisively, any claim of Brady violation must fail where, even now, the defendant can point to nothing concrete — a document, an email, a waiver, or anything at all — that is remotely exculpatory and was withheld from the defense.

With respect to the allegedly "exculpatory" affidavit by Lee Goldberg (attached to the defendant's motion as Exhibit G), a review of that affidavit plainly shows that it is barely relevant, let alone exculpatory. The affidavit discusses an unrelated $10,000 personal loan that Mr. Goldberg previously made to the defendant, and it further vouches for the defendant's "honesty" based on Goldberg's "30+ years of knowing [the defendant]." Even if the affidavit were exculpatory — which it clearly is not — Mr. Goldberg testified at trial as a defense witness and stated these same facts in open court. See Trial Tr. 1158-60. By definition, there could be no Brady violation based on "withheld" or "hidden" evidence where the defendant knew about the existence of Mr. Goldberg and even subpoenaed him to provide sworn testimony at trial.

With respect to the other <u>Brady</u>-like arguments advanced by the defendant, they are nothing more than the type of conclusory allegations that fall far short of satisfying the defendant's burden in a § 2255 motion. Instead of laying before the Court exculpatory evidence that was allegedly withheld at the time the criminal action was pending, the defendant proceeds backwards: She starts from the mistaken assumption that certain "waivers" were granted by the grant officials — despite the jury's verdict and notwithstanding the overwhelming trial evidence to the contrary — and, from there, argues that documents reflecting the same must therefore exist, and the only reason she never saw them was because the Government hid them. <u>See</u> Motion at 9 ("Riley must have created contemporaneous documents"; "Circumstantial clues point to much more [undisclosed materials]"). This kind of speculative and unsubstantiated allegations are insufficient to support a claim of <u>Brady</u> violations. <u>See</u> <u>Skinner</u> v. <u>Duncan</u>, 2003 WL 21386032, at *25 and n.39 (S.D.N.Y. June 17, 2003); <u>Polanco</u> v. <u>United States</u>, 2000 WL 1072303, at *10 (S.D.N.Y. Aug. 3, 2000) ("undetailed and unsubstantiated assertions . . . have been consistently held insufficient" to make out constitutional 2255 claims).

### B.   Actual Innocence

With respect to the defendant's actual innocence claim, the defendant does not point to the existence of any "new evidence" demonstrating her "actual innocence," <u>Schlup</u> v. <u>Delo</u>, 513 U.S. 298, 327 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."); <u>James</u> v. <u>United States</u>, 2002 WL 1023146, at *21 (S.D.N.Y. May 20, 2002) ("Because James' claim of actual innocence is unsupported by any new evidence that was not available at trial, it does not justify any relief under § 2255."). Even where a defendant is able to adduce "new

evidence," the quality of the new evidence must not be ambiguous and confusing, but "must be so strong that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at *21 (emphasis added). Moreover, even with new evidence that "meets this rigorous standard," id. at 21, it is not at all clear that a claim of actual innocence unrooted in an alleged constitutional violation, as here, can give rise to a cognizable claim in a § 2255 petition. See Herrera v. Collins, 506 U.S. 390 (1993); Ermichine v. United States, 2011 WL 1842951, at *14 (S.D.N.Y. May 12, 2011).

In this case, the defendant's claim can be rejected without extended analysis because it fails at the threshold. The defendant begins her surreply with the unambiguous statement that the "main 'new' evidence in this case is arithmetic/math." Motion at 1. "Arithmetic/math" — or, the defendant's disagreement about the accounting evidence and inferences derived therefrom — is not "new evidence," and provides no basis to set aside the verdict.

But even if the Court were to overlook the absence of any "new evidence," and even if the Court were to find that the quality of the nonexistent "new evidence" is sufficiently "strong" and "rigorous," and even if this Court were to hold, contrary to Supreme Court precedent, that a claim of actual innocence unrooted in a claim of constitutional violation can entitle a petitioner to relief under § 2255, the defendant's claim still fails. This is because, to succeed on this claim, the defendant would have to show (1) she did not misapply grant funds exceeding $5,000 (see 18 U.S.C. § 666); or (2) even if she did, she did not do so with the requisite criminal intent. With respect to the first claim — there was no misapplication of grant funds exceeding $5,000 — it is a showing that the defendant did not even seriously attempt to make at trial, for the simple reason that it is demonstrably untrue, as shown by a straightforward

9

comparison between the approved budgets and the defendant's actual expenditures as documented by bank records and credit card records. See GXs 114, 115. As shown in Government Exhibits 114 and 115, the total amount of the defendant's unauthorized expenditures was approximately $465,142. See GXs 114, 115. Even if every doubt in the accounting was resolved in the defendant's favor — and in a § 2255 motion, the presumption is reversed, in favor of not disturbing the finality of the jury's verdict — the loss amount easily exceeds $5,000. The money the defendant spent on cleaning services on her apartment alone in 2001-2002 — an expense category that was not in any approved budget — was $5,019, and this amount alone would be enough to support the jury's finding of guilt.

Hence, before this Court and in front of the jury, trial counsel wisely chose to focus, not on the accounting as such, but on defendant's intent instead. See Trial Tr. 5 ("The defense is very simply that Dr. Karron had no intent to do anything — to do anything that rises to the level of criminal responsibility."); id. 45-46 ("And I stand here and I tell you that Dr. Karron is guilty of making mistakes, he is guilty of not dotting every I and crossing every T, he is guilty of not following the guidelines, and he is guilty of not having a manual in place. But they are accusing him of intentionally misusing funds. . . .").

In returning a guilty verdict against the defendant, however, the jury necessarily found that the defendant acted with the requisite criminal intent. Its inference about the defendant's state of mind is supported by powerful evidence of the defendant's criminal intent, including:

- testimony from grant officials that the defendant was explicitly advised about the rules of the grant both before the start of the grant, see Tr. 88, 108-09, 257-59, and while the project was in progress, when the defendant was explicitly told, time and again, that her repeated requests for budget modifications had been denied, see Tr. 123, 130, 259, 303-04 ("No, again and again, absolutely not.");

10

- testimony from multiple employees from the defendant's own company, CASI, that they, too, repeatedly warned the defendant that she could not misspend federal funds in this fashion. See Tr. 840-42 (testimony of Frank Spring); Tr. 639-41, 667, 697 (testimony of Lee Gurfein); Tr. 978-79, 982-93, 997 (testimony of Bob Benedict);

- contemporaneous email correspondence between Frank Spring and the defendant corroborating Spring's testimony about the defendant's awareness of the rules and her determination to violate them nonetheless. See GXs 142-45, 147, 149 (emails with Frank Spring);

- an email written by the defendant showing that she intended to lie about living in Connecticut to justify charging rent on her New York apartment as a grant expense. See GX 213 ("I will make a lease with Windy [in Connecticut] and make like I only keep a folding bed on 33rd Street. If ATP buys into this idea, then I can charge my rent on the apartment to the grant and pay my mortgage); and

- an email written by the defendant showing that she intended to engage in financial blackmail to force the Government to give way. See GX 203, at 3 ("I am weighing abandoning the grant at this point and forcing the government to try to collect 1.4M from me and make the grant enough of a train wreck that they have to cooperate on finding a liveable situation for all of us. It is that bad and I am ready to shove the situation to such a unpalatable end that we get some cooperation from them.").

The defendant's disagreement with the jury's assessment of the witnesses' credibility and the inferences the jury drew from the trial evidence concerning the defendant's criminal intent is not a basis to upset the conviction. Aside from conclusory allegations about nonexistent evidence that "must have" existed, and that purportedly would have shown the defendant did not act with criminal intent, see Motion at 9, 14, the defendant has adduced nothing, and certainly no "new evidence" that meets the required rigorous standard in a § 2255 motion, to support her claim of actual innocence based on her lack of criminal intent.

To the extent the defendant's § 2255 motion is construed to include the claim that she was <u>sentenced</u> improperly, the motion should also be denied. First, any sentencing claims are procedurally defaulted because they were not raised on direct appeal. On appeal, the defendant

11

was represented by an attorney (Marshall Mintz, Esq.) different from her trial counsel (Ronald Rubinstein, Esq.) who had every incentive and opportunity to bring to the attention of the appellate court any and all meritorious sentencing issues. No sentencing issues were raised on appeal. Because the defendant, in the instant § 2255 motion, does not allege, much less show, good cause why sentencing claims could not have been raised before the Second Circuit, any sentencing arguments the defendant now wishes to make are procedurally barred.

Second, aside from her inability to show "cause" for failing to raise any sentencing issues on direct appeal, there was also no "prejudice." See Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010). At sentencing, the Court gave the defendant every benefit of the doubt and imposed a sentence that was reasonable, fair, and appropriate. Notably, the Court did not count every dollar that the defendant misapplied toward the total loss amount, observing that "a failure to get approval of expenditures from the grant officer" might not have amounted to an "intentional misapplication of funds" with the requisite criminal intent. (Sent. Tr. 3). In other words, while the jury found that the defendant misapplied at least $5,000 in federal funds with the requisite criminal intent, it did not find an exact amount over $5,000 that was misapplied intentionally and willfully. That task fell to this Court at sentencing. To give the defendant every benefit of the doubt, this Court counted only those expenditures that did not fit within any approved budget categories — i.e., items such as meals, cleaning, home improvement expenses, rent, doctor/lawyer fees, etc. — that clearly fell outside of the types of expenses that the defendant might reasonably, albeit mistakenly, have thought were allowable. (Sent. Tr. 57-58). That is, the Court did not include in the total loss amount any expenses that fit within an approved budget category, even though the defendant spent more than the approved, allocated amount for that category — e.g., overspending on equipment, travel, fringe benefits, excessive

salaries, etc.  The Court did so on the reasoning that, with respect to these legitimate categories of expenses, the overspending might have been unintentional and might not have risen to the level of criminal intent, especially because the defendant's record-keeping was in a state of hopeless disarray.  (Sent. Tr. 29, 57-58, 89-91) ("Take the ones that aren't within the budget, the nonbudgeted items, and add them up . . . ."; "I am going to make the findings on the basis that [the Government] suggested.  And taking the amounts in the other categories that are not included in the budget . . . .").

        Following this methodology, and making a few additional adjustments in the defendant's favor that further lowered the total loss amount, the Court found that the loss was more than $120,000, yielding an adjusted offense level of 16.  (Sent. Tr. 58, 89).  Based on Criminal History Category I, the Guidelines called for a sentence of 21-27 months.  (Sent. Tr. 89).  Taking into account all the relevant sentencing factors under 18 U.S.C. § 3553(a), the Court sentenced the defendant to a below-Guidelines custodial sentence of 15 months, with the first 7.5 months of imprisonment to be served in a Bureau of Prison facility, and the last 7.5 months in home confinement.  The defendant has since completed her custodial sentence.

        Hence, even if the defendant's corrected surreply were construed to include a challenge to her sentence, particularly the amount of federal grant funds over $5,000 that she misapplied with criminal intent, the motion still fails and should be denied.

### III. Conclusion

For the reasons set forth above, as well as in the Government's July 15, 2011 Memorandum of Law, the defendant's § 2255 motion should be denied. In addition, the defendant's Rule 41(g) motion should be denied, both because it was filed out of time and because it fails on the merits.

Dated:     New York, New York
           February 1, 2012

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney


                    By:    ____/s/_____
                           Chi T. Steve Kwok / Christian R. Everdell
                           Assistant United States Attorneys
                           Tel: (212) 637-2415/2556
                           Fax: (212) 637-0086

CERTIFICATE OF SERVICE

Chi T. Steve Kwok deposes and says that he is employed in the Office of the United States Attorney for the Southern District of New York.

That on February 1, 2012, he caused to be served a copy of the foregoing Government's Response to Defendants' Rule 41(g) Motion for Return of Property and Defendant's Corrected Surreply in Support of Her 2255 Motion by ECF and by Federal Express on:

>Daniel B. Karron
>348 East Fulton Street
>Long Beach, NY  11561

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. Section 1746.


_____/s/_____
CHI T. STEVE KWOK

Executed on:  February 1, 2012
              New York, New York