AO 252
(2/75)

# CRIMINAL DOCKET SHEET

DOUGLAS F. EATON, U.S. MAGISTRATE JUDGE SDNY

M9-150                                07 MAG 0970

DOCKET NUMBER _____

| THE UNITED STATES VS. | ATTORNEY FOR U.S. |
|---|---|
| ITEMS IDENTIFIED IN THE INVOICES ATTACHED AS EXHIBIT A HERETO FROM DATAVISION, GENERAL COMPUTER & SERVICE, HOMEFRONT HARDWARE, SILICON CITY, INC., AND SILICON GRAPHICS, INC., INCLUDING BUT NOT LIMITED TO, COMPUTER EQUIPMENT, COMPUTER PARTS, LAPTOP COMPUTERS, WEBCAMS, PRINTERS, MONITORS, PROJECTORS, SCANNERS, OTHER ELECTRONIC APPLIANCES, KITCHEN ITEMS, AND OTHER ASSORTED PERSONAL COMPUTER ITEMS | AUSA STEVE KWOK<br><br>ATTORNEY FOR DEFENDANT |

| OFFENSE | U.S. CODE CITATION |
|---|---|
| SEIZURE WARRANT | |

C.J.A.        Pub. Def.        Retained        Waived

| PROCEEDINGS | MAG. | DATE | BAIL |
|---|---|---|---|
| SEARCH WARRANT ISSUED | DOUGLAS F. EATON | 6/19/07 | AMOUNT SET |
| SEARCH WARRANT RETURNED | GABRIEL W. GORENSTEIN | 6/27/07 | $ |
| COMPLAINT FILED | | | DATE POSTED |
| ARREST WARRANT ISSUED | | | |
| INITIAL APPEARANCE | | | |

Personal Recog.                Unsecured Bond

**CONDITIONAL RELEASE**

10% Deposit                Surety Bond

Collateral or                Third Party
Secured Bond                Custody

PRELIMINARY EXAMINATION
OR REMOVAL HEARING          WAIVED          NOT WAIVED          SCHEDULED FOR _____

DATE CONDUCTED          TAPE NUMBER          INTERVENING INDICTMENT OR INFORMATION

| DATE | PROCEEDINGS | TAPE NUMBER |
|---|---|---|
| 6/19/07 | FLD. SEIZURE WARRANT. SO ORDERED U.S. MAGISTRATE JUDGE DOUGLAS F. EATON. | VB |
| 6/27/07 | FLD. RETURN OF SEARCH WARRANT SWORN TO BEFORE U.S. MAGISTRATE JUDGE GABRIEL W. GORENSTEIN.  CASE SEALED AND PLACED IN VAULT. | VB |

**OUTCOME**

Held for Action of District Court          Dismissed

Held to Answer to U.S. District Court at _____

Bond Exonerated          Bond to Transferee District

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: CHI T. STEVE KWOK (CK-5420)
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2415

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| UNITED STATES OF AMERICA : | <u>Filed Under Seal</u> |
| | AFFIDAVIT IN SUPPORT OF |
| -v.- : | SEIZURE WARRANT PURSUANT |
| | TO 18 U.S.C. § 981 |
| Items identified in the invoices : | |
| attached as Exhibit A hereto | |
| from Datavision, General Computer & : | |
| Service, HomeFront Hardware, | |
| Silicon City, Inc., and Silicon : | |
| Graphics, Inc., including, but not | |
| limited to, computer equipment, : | |
| computer parts, laptop computers, | |
| webcams, printers, monitors, : | |
| projectors, scanners, other | |
| electronic appliances, kitchen items,: | |
| and other assorted personal consumer | |
| items, : | |
| Defendants <u>in</u> <u>rem</u>. | |

- - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| STATE OF NEW YORK | ) |
| COUNTY OF NEW YORK | :ss.: |
| SOUTHERN DISTRICT OF NEW YORK | ) |

RACHEL ONDRIK, being duly sworn, deposes and says:

## <u>INTRODUCTION</u>

1.  I am a Special Agent with the United States
Department of Commerce, Office of the Inspector General, Office
of Investigations, and have been so employed for approximately
the past six years.  For the past four years, I have been
assigned to an investigation involving Dr. Daniel B. Karron, the
President and Chief Technical Officer of a company called

Computer Aided Surgery, Inc. ("CASI"), which was a recipient of a Federal research grant awarded by the National Institute of Standards and Technology ("NIST") under its Advanced Technology Program ("ATP").  The ATP grant began in 2001 but was suspended in 2003 due to suspicions that Dr. Karron was misapplying Federal grant funds toward the payment of unauthorized personal and other expenses, in violation of the terms and conditions of the ATP grant program, and in violation of Title 18, United States Code, Section 666.

2.   I make this affidavit in support of the Government's application for the issuance of a warrant to seize and forfeit the items described in the invoices that are attached to this affidavit as Exhibit A (collectively the "Computer Equipment and Household Items").

3.   This affidavit is based primarily upon my personal involvement in the investigation; my review of, among other things, audit reports prepared by the Department of Commerce, invoices from computer equipment and personal consumer goods vendors, and Dr. Karron's and CASI's financial documents; my personal observation of the Computer Equipment and Household Items during a consensual tour of Dr. Karron's apartment with Dr. Karron's then-defense counsel in or about January 2007; and my conversations with other law enforcement officers and others. Because this affidavit is being submitted for the limited purpose

-2-

of establishing probable cause for the issuance of a seizure
warrant, it does not include all the facts that I have learned
during the course of this investigation.  Where the contents of
documents and the actions and statements of others are reported
herein, they are, unless otherwise indicated, reported only in
substance and in part.

4.    On June 13, 2007, a Grand Jury sitting in this
District returned an Indictment, 07 Cr. 541, charging Dr. Karron
with misapplying more than $5,000 in Federal funds from an ATP
grant awarded to CASI toward the payment of unauthorized
expenses, in violation of Title 18, United States Code, Section
666.  The Indictment is attached to this affidavit as Exhibit B.

5.    As set forth below, there is probable cause to
believe that Dr. Karron used part of the misapplied Federal funds
to purchase the Computer Equipment and Household Items.  As shown
in the documentary evidence I reviewed, virtually all the
Computer Equipment and Household Items were neither approved in
CASI's approved budget nor approved by NIST officials orally or
in writing subsequent to the approval of the budget.  All of the
Computer Equipment and Household Items are subject to seizure and
forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as the proceeds
of theft concerning the Federal ATP program, in violation of
Title 18, United States Code, Section 666.

-3-

## BACKGROUND

6.    This application arises from an investigation of Dr. Karron and CASI in connection with an ATP grant awarded by NIST.  The grant was designed to assist CASI in developing new computer technologies and computer models for use in radiation therapy and surgical planning.  Under the terms and conditions of the grant, recipients must abide by the approved budget and obtain written approvals before they deviate from the budget.  In addition, absent express written approvals from NIST officials, indirect costs — i.e., overhead expenses such as rent, meals, Internet services, etc. — cannot be paid for using program funds.

7.    As President and Chief Technical Officer of CASI, Dr. Karron agreed to abide by these terms and conditions by signing various grant award documents and certifications. Accordingly, beginning in 2001, CASI was awarded the ATP grant, for a total of $2.1 million that was allocated over the course of three years for the approved research.

8.    From reviewing financial and accounting documents provided by Dr. Karron and CASI during the middle of the grant period, NIST discovered that Dr. Karron was repeatedly violating the terms and conditions of the grant program by, among other things, using Federal grant funds to pay rent, to renovate his apartment, to pay for restaurant meals, and to purchase computer equipment and other personal items that were not approved items

-4-

in the budget and the purchase of which had never been approved by NIST. Moreover, from my interviews with CASI employees and NIST officials, I learned that Dr. Karron made these purchases against the repeated warnings of NIST officials and his own subordinates.

9. By the time NIST suspended the grant in June 2003, about $1.3 million had already been dispersed. According to a Department of Commerce audit after the suspension of the grant, approximately $390,280 was misapplied by Dr. Karron toward the payment of unauthorized expenses.

10. On June 13, 2007, a Federal Grand Jury sitting in this District returned an Indictment, 07 Cr. 541, charging Dr. Karron with knowingly misapplying more than $5,000 in Federal funds from the ATP grant awarded to CASI by NIST toward the payment of unauthorized expenses, in violation of Title 18, United States Code, Section 666.

## THE COMPUTER EQUIPMENT AND HOUSEHOLD ITEMS

11. From a review of CASI's approved budget and invoices that I obtained from various computer equipment and personal consumer goods vendors, I was able to determine that Dr. Karron had used part of the misapplied Federal funds to purchase the Computer Equipment and Household Items.

-5-

12.  By way of illustration, from an invoice obtained
from a company vendor known as Datavision, I learned that Dr.
Karron bought, among many other things, items identified as
"Cardscan Office USB 600C V6" (retail value:  $425) and "Strobe
XP 200 SheetFed 600dp" (retail value:  $559.98).  From a review
of financial documents, I learned that these items were paid for
using ATP funds awarded to CASI.  These items do not fall into
any category of approved expenditures.  Nor did NIST give Dr.
Karron approval to purchase these items.

13.  As another example, from an invoice obtained from
a hardware store known as HomeFront Hardware, I learned that Dr.
Karron bought, among many other things, a "Duromatic 5.0 Liter
Pressure Cooker" (retail value:  $144.99), a "Cobalt Blue Prof
Bar Blender" (retail value:  $139.95), and a "Dust Buster 7.2v
Cordless Hand Vac" (retail value:  $80.95).  From a review of
financial statements, I learned that these items were paid for
using ATP funds awarded to CASI.  These items do not fall into
any category of approved expenditures.  Nor did NIST give Dr.
Karron approval to purchase these items.

14.  From my review of the terms and conditions of the
grant, the invoices attached to this Affidavit, conversations
with computer forensic experts and other persons knowledgeable
about computer equipment, I learned that virtually all of the
Computer Equipment and Household Items listed in the invoices

attached hereto do not relate to the research for which the ATP grant was approved.

15. In or about January 2007, Dr. Karron's then-defense counsel, M. Scott Peeler of Arent Fox LLP, gave me and other law enforcement agents a consensual tour of Dr. Karron's apartment, located at 300 East 33rd Street, Suite 4N, New York, NY 10016. I personally observed that the apartment was stockpiled with computers, computer-related equipment, electronic appliances, and other consumer items. Mr. Peeler stated to me and other agents who accompanied me on the tour that virtually all the computer equipment and household items in the apartment were purchased with Federal funds. Mr. Peeler further stated that additional items were stored in the apartment building's downstairs storage units assigned to Dr. Karron.

## STATUTORY BASES FOR FORFEITURE

16. The statutory provisions pursuant to which the Computer Equipment and Household Items are subject to seizure and forfeiture are set forth below.

17. Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture:

> [a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specific unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

-7-

18.   18 U.S.C. § 1956(c)(7)(D) provides that the term "specified unlawful activity" includes, among other things, "an offense under . . . section 666 [of Title 18, United States Code] (relating to theft or bribery concerning programs receiving Federal funds)."

19.   For the foregoing reasons, there is probable cause to believe that all of the Computer Equipment and Household Items are subject to seizure and forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to theft involving a grant program receiving Federal funds.  Had NIST known of the disallowed purposes to which Dr. Karron would put the ATP grant funds, contrary to Dr. Karron's multiple representations in the grant award documents, the grant application would have been denied and no money would have been disbursed.

20.   Section 981(b) provides that seizures pursuant to section 981(a) may be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure.

21.   For the reasons set forth above, I respectfully request that the Court issue a seizure warrant, pursuant to 18 U.S.C. § 981(b), for the Computer Equipment and Household Items, to be executed in the daytime between 6:00 A.M. to 10:00 P.M.

-8-

22.   In addition, because the Computer Equipment and Household Items are located both at Dr. Karron's residence, located at 300 East 33rd Street, Suite 4N, New York, NY 10016 ("the apartment unit"), and in the apartment building's storage units assigned to Dr. Karron, I respectfully request that the Court grant authorized law enforcement agents the authority to enter the apartment unit and to access the apartment building's storage units assigned to Dr. Karron for the purpose of executing the warrant for seizure.

23.   I have personally observed the area near and around the apartment building located at 300 East 33rd Street, New York, NY  10016, known as the Kips Bay Towers.  The apartment building is a 20-story residential high-rise condominium building located between First and Second Avenue in Manhattan.  The front of the building is comprised of exposed concrete and large picture windows.

24.   I have also personally observed the apartment unit Suite 4N.  Suite 4N is located on the 4th floor of the apartment building described above.  The door to the apartment unit is clearly marked "4N."  The apartment unit has a living room/office area, a small kitchenette, a bathroom, and one bedroom.

25.   During a consensual tour of the apartment unit in January 2007, Dr. Karron's then-defense counsel, Mr. Peeler, informed me that the storage units assigned to Dr. Karron are

-9-

located within the apartment building described above in the downstairs common storage area.

26. Because of the sensitive nature of the matters described above, because the investigation is ongoing, and in order to prevent the removal of the Computer Equipment and Household Items prior to the execution of the warrant for seizure, the Government respectfully requests that this Affidavit be filed and kept under seal until further order of this Court.

_____
RACHEL ONDRIK
Special Agent
Department of Commerce
Office of the Inspector General
Office of Investigations

Sworn to before me
this 19th day of June, 2007

_____
Honorable Douglas F. Eaton
United States Magistrate Judge
Southern District of New York