U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 12, 2012

**BY HAND**

The Honorable Robert P. Patterson
United States District Judge
500 Pearl Street
New York, NY 10007

Re:  **United States v. Daniel B. Karron**,
12-CV-118 (RPP)

Dear Judge Patterson:

      The Government respectfully submits this letter in opposition to plaintiff Daniel B. Karron's letter, dated July 11, 2012 ("Ltr."), requesting an additional 60 days' extension of time to identify the specific items that she claims were seized unlawfully from her apartment more than five years ago. For the reasons set forth below, and based on the materials that plaintiff has submitted thus far, it has now become abundantly clear that plaintiff has no good-faith basis for bringing this motion. Instead, in the Government's view, this motion is nothing more than another attempt by plaintiff to collaterally attack her criminal conviction — an attack, moreover, premised on the remarkable theory that, contrary to the jury's guilty verdict, Karron did not misuse federal grant funds in purchasing the seized items because she had actually spent her own money in making the purchases. To vindicate the strong federal interests in the finality of the criminal verdict against Karron, as well as the finality of the $4 million civil judgment that Judge Buchwald has imposed on plaintiff, plaintiff's Rule 41(g) motion should be denied with prejudice.

      By Order dated June 6, 2012, this Court held that Daniel B. Karron has not satisfied her burden of showing that the items that were seized from her home on June 26, 2007, were purchased with non-grant, personal funds. (Order at 7). Moreover, this Court held that, even assuming arguendo that plaintiff could show that certain discrete items were paid for using funds drawn from her personal bank accounts, in light of the fact that the Government has proven at Karron's criminal trial that plaintiff has misused federal grant funds to pay for personal expenses (such as back rent) and because "money is considered fungible," "it may be difficult for Plaintiff to show what she actually purchased with her personal funds during the Grant period." (Id.). Finally, in light of the $4 million civil judgment that has been entered against plaintiff, this Court concluded that "it is appropriate that the seized property held by the Government . . . be used to satisfy that civil judgment." (Id.). However, in recognition of the fact that "Plaintiff is proceeding pro se," the Court gave plaintiff another chance to make the requisite threshold

The Honorable Robert P. Patterson
July 12, 2012
Page 2

showing by directing her, within "thirty (30) days" from the date of its Order, "to identify to the Court the specific items of property that she claims should be returned to her." (Id.) (emphasis in original). The Order also directed plaintiff to "provide the Court with factual support, in the form of documents, bank records, or credit card statements, which demonstrate that those specific items were not purchased with the funds provided by NIST [the National Institute of Standards and Technology]." (Id. at 8).

In her latest submission, plaintiff made no attempt whatsoever to identify which specific item(s) — among the list of 82 items seized from her home on June 26, 2007 (Exhibit A) — were purchased with her own personal funds. See Ltr. at 1. Instead, plaintiff states that "because of the poor state of [her] records from that period" and "the volume of detail" (Ltr. at 1), she has been unable to do so. (Ltr. 1). Moreover, plaintiff has not offered any original underlying records in support of her claim that items were "over-seized," but attaches spreadsheet summaries that were never introduced in any prior proceedings and whose accuracy or reliability is completely unknown and unverified.

In contrast, as the Government has proven beyond a reasonable doubt at plaintiff's criminal trial, CASI had no sources of funding independent of NIST. (See GXs 112, 113, attached hereto as Exhibit B). Indeed, if plaintiff's current claim that the seized items were bought using her own money were credited by the criminal jury, she could not have been convicted of any crime, for the simple reason that she would not have been guilty of misapplying federal funds that is the basis for a violation under 18 U.S.C. § 666. Moreover, during the pendency of the criminal case, plaintiff repeatedly represented to this Court that she was indigent, could not come up with the $30,000 to pay for duplication and discovery costs, and requested the Government to advance her that expense. (Order at 3-4 & n.4). These representations substantially undermine plaintiff's current claim that she actually had undisclosed sources of income that she previously hid from the Court and the Government and thus she was able to pay for computers and electronic equipment using her own money, even "after the project was suspended" and federal funding was cut off. (Ltr. at 2). Finally, as the Court recognized in its Order, even if, arguendo, plaintiff could show that certain purchases were initially paid for using funds drawn from her personal accounts (and plaintiff hasn't even shown this much in her latest submission), given the fungibility of money and her massive misuse of NIST funds to pay for personal expenses that totaled at least $125,000, see Order at 3 (restitution in the amount of $125,000); see also Exhibit C, plaintiff does not and cannot show "what she actually purchased with her personal funds during the Grant period." (Order at 7).

At bottom, the fact that plaintiff has not made any attempt, even at this late date, to identify with particularity specific items that were allegedly "over-seized" suggests that the plaintiff has no good faith basis to believe that any particular items were purchased with her personal funds. Instead, through the guise of a Rule 41(g) motion, plaintiff seeks merely to engage in a fishing expedition involving years-old records that she admits are in a "poor state." Moreover, as demonstrated by plaintiff's complete failure to comply with this Court's June 6, 2012 Order, plaintiff appears to want to re-litigate the entire theory of the Government's criminal case again — i.e., claiming that she paid for all the seized items, not just certain specified items, using her own personal funds, not federal money. And she does so now after her conviction has been affirmed on appeal, her § 2255 motion has been denied, and a $4 million civil judgment has been entered against her by Judge Buchwald.

The Honorable Robert P. Patterson
July 12, 2012
Page 3

      Because the motion is meritless, and because plaintiff has made no attempt to comply with the Court's June 6, 2012 Order even after the Court gave her a second chance to make the necessary threshold showing, and even after multiple prior requests for extension of time were granted without objection from the Government (see 12 Civ. 118, Dkt. Entries # 12, 15), plaintiff should not be allowed to drag out the disposition of this motion for yet another 60 days.

      For all the foregoing reasons, plaintiff's Rule 41(g) motion should be denied with prejudice.

      Respectfully submitted,

      PREET BHARARA
      United States Attorney

By: *[signature]*

Chi T. Steve Kwok
Christian R. Everdell
Assistant United States Attorneys
(212) 637-2415 / (212) 637-2556

Enclosures

cc:     Daniel B. Karron, pro se (by Federal Express)

EXHIBIT A

# List of Items seized pursuant to warrant.
## 6/26/07, Case 16227

| # | Seizure Date | Seizure time | Seizure Location | Item Description/ID |
|---|---|---|---|---|
| 1 | 6/26/2007 | 8:00 AM | A | server casi 192.168.0.118 |
| 2 | 6/26/2007 | 8:00 AM | A | server casi 02 216.213.166.227 |
| 3 | 6/26/2007 | 8:00 AM | A | server casi 04 SGI Octane 2 |
| 4 | 6/26/2007 | 8:00 AM | A | server casi 16 192.168.0.116 |
| 5 | 6/26/2007 | 8:00 AM | A | server case black |
| 6 | 6/26/2007 | 8:00 AM | A | rackmount computer IU |
| 7 | 6/26/2007 | 8:00 AM | A | Overland neo |
| 8 | 6/26/2007 | 8:00 AM | A | Raid Array 1-10 this location |
| 9 | 6/26/2007 | 8:00 AM | A | Raid Array Bottom this location |
| 10 | 6/26/2007 | 8:00 AM | A | server casi 100 192.168.0.100 |
| 11 | 6/26/2007 | 8:00 AM | A | Extreme network summit 7 switch |
| 12 | 6/26/2007 | 8:30 AM | A | UPS APC (power source) |
| 13 | 6/26/2007 | 8:30 AM | A | Power supply (blue) |
| 14 | 8/26/2007 | 8:30 AM | A | Hatch Panel |
| 15 | 6/26/2007 | 9:00 AM | A | Linksys Router antenna and power supply |
| 16 | 6/26/2007 | 9:00 AM | A | 16 port switch Linksys and power supply |
| 17 | 6/26/2007 | 9:00 AM | A | D-Link Router DCM-202 + power supply |
| 18 | 6/26/2007 | 9:00 AM | A | Projector Screen |
| 18A | 6/26/2007 | 9:00 AM | A | Controller Box for Projector Screen |
| 19 | 6/26/2007 | 9:00 AM | A | Hatch Panel |
| 20 | 6/26/2007 | 9:30 AM | A | Sony Cybershot Camera DSC-F707 |
| 21 | 6/26/2007 | 9:30 AM | A | Digital Camera Batteries |
| 22 | 6/26/2007 | 9:30 AM | A | Remote Power Control/BayTech |
| 23 | 6/26/2007 | 9:30 AM | A | InFocus LCD Projector with mount |
| 24 | 6/26/2007 | 10:00 AM | A | server casi 112 192.168.9.112 |
| 25 | 6/26/2007 | 10:00 AM | A | server casi 03 192.168.0.103 |
| 26 | 8/26/2007 | 10:00 AM | A | HP Laserjet 1200 printer |
| 27 | 6/26/2007 | 10:00 AM | A | Linksys Print Server PSUS4 |
| 28 | 6/26/2007 | 10:00 AM | A | HP Laserjet 4 with Document Feeder |
| 29 | 6/26/2007 | 10:30 AM | A | casi 15 192.168.0.115 |
| 30 | 6/26/2007 | 10:30 AM | A | GBC Shredmaster 3260x shredder |
| 31 | 6/26/2007 | 10:30 AM | A | Check Scanner RDS-3000 |
| 32 | 6/26/2007 | 10:30 AM | A | Visioneer Strobe XP Paper port (1 of 2) |
| 33 | 6/26/2007 | 10:30 AM | A | Neat Receipts Receipt Scanner |
| 34 | 6/26/2007 | 10:30 AM | A | Card Size Scanner Corex Cardscan |
| 35 | 6/26/2007 | 10:30 AM | A | Visioneer Strobe XP Paper port (2 of 2) |
| 36 | 6/26/2007 | 10:30 AM | B | Dust Buster |
| 37 | 6/26/2007 | 11:00 AM | B | Kitchen Classics Blender by Waring |
| 38 | 6/26/2007 | 11:00 AM | A | Porter Cable Tiger Saw quickcharge |
| 39 | 6/26/2007 | 11:00 AM | A | Two (2) Batteries and charger for item 38 |
| 40 | 6/26/2007 | 11:00 AM | A | Three (3) boxes Dewalt drill bits |
| 41 | 6/26/2007 | 11:00 AM | A | Porter Cable Rechargeable Tool Set |
| 42 | 6/26/2007 | 11:00 AM | A | Set of 3 rechargeable flashlights w/chargers |
| 43 | 6/26/2007 | 11:00 AM | A | Monitor Casi 12 Samsung Syncmaster (1) |

All seizure locations are identified letter coded rooms within 300 E. 33rd Street, Apartment 4N, New York, NY

# List of Items seized pursuant to warrant.
## 6/26/07, Case 16227

| #  | Date      | Time     | Loc | Item |
|----|-----------|----------|-----|------|
| 44 | 6/26/2007 | 11:00 AM | A | Monitor Casi 02 Samsung Syncmaster (2) |
| 45 | 6/26/2007 | 11:00 AM | A | IBM Thinkpad laptop with docking station |
| 46 | 6/26/2007 | 11:00 AM | A | Large STABILA bubble level |
| 47 | 6/26/2007 | 11:00 AM | A | Dremel Rechargeable Rotary Tool w/charger |
| 48 | 6/26/2007 | 11:00 AM | A | Flatbed Scanner RICOH Aficio IS330 |
| 49 | 6/26/2007 | 11:00 AM | A | CTX LCD Monitor w/power supply |
| 50 | 6/26/2007 | 11:00 AM | A | Docking Station casi 17 (no laptop) |
| 51 | 6/26/2007 | 11:30 AM | A | SGI Monitor casi (1) casi 104 |
| 52 | 6/26/2007 | 11:30 AM | A | SGI Monitor (2) |
| 53 | 6/26/2007 | 11:30 AM | A | SGI Monitor (3) large widescreen casi 104 |
| 54 | 6/26/2007 | 11:30 AM | A | Standalone Air Conditioning Unit |
| 55 | 6/26/2007 | 12:00 PM | A | Six (6) ergotron monitor swing mounts |
| 56 | 6/26/2007 | 12:00 PM | A | Raid Enclosures four (4) |
| 57 | 6/26/2007 | 12:00 PM | A | Miscellaneous keyboards/peripherals |
| 58 | 6/26/2007 | 12:00 PM | E | casi 007 svr SGI Octane 2 216.213.116.232 |
| 59 | 6/26/2007 | 12:00 PM | E | Raid array (1 of 2 this location) |
| 60 | 6/26/2007 | 12:00 PM | E | Raid array (2 of 2 this location) |
| 61 | 6/26/2007 | 12:30 PM | E | casi 11 svr SGI Octane 2 216.213.166.236 |
| 62 | 6/26/2007 | 12:30 PM | E | casi 13 216.213.166.238 |
| 63 | 6/26/2007 | 12:30 PM | E | casi 13 Samsung Syncmaster Monitor |
| 64 | 6/26/2007 | 12:30 PM | E | SGI monitor (1 of 4 this location) casi 11 |
| 65 | 6/26/2007 | 12:30 PM | E | SGI monitor (2 of 4 this location) |
| 66 | 6/26/2007 | 12:30 PM | E | SGI monitor (3 of 4 this location) w/spkrs |
| 67 | 6/26/2007 | 12:30 PM | E | SGI monitor (4 of 4 this location) casi 007 |
| 68 | 6/26/2007 | 1:30 PM  | E | DTS-3 |
| 69 | 6/26/2007 | 1:30 PM  | E | HP Scanjet 5P |
| 70 | 6/26/2007 | 1:30 PM  | E | SGI DVD-ROM External Drive |
| 71 | 6/26/2007 | 1:30 PM  | A | Linksys Security Webcam |
| 72 | 6/26/2007 | 1:30 PM  | E | SGI Software |
| 73 | 6/26/2007 | 1:30 PM  | E | SGI Controller (NFI) |
| 74 | 6/26/2007 | 1:30 PM  | E | Set of 2 rechargeable flashlights w/chargers |
| 75 | 6/26/2007 | 1:30 PM  | A | Shoe Rack |
| 76 | 6/26/2007 | 1:30 PM  | A | Set of multicases with hardware (31 ct.) |
| 77 | 6/26/2007 | 1:30 PM  | E | Four (4) ergotron monitor swing mounts |
| 78 | 6/26/2007 | 1:30 PM  | E | Miscellaneous peripherals and cables |
| 79 | 6/26/2007 | 2:00 PM  | Basement Storage 55 | GPS System |
| 80 | 6/26/2007 | 2:00 PM  | Basement Storage 55 | DDS-3 Tape Backup |
| 81 | 6/26/2007 | 2:00 PM  | Basement Storage 56 | Circular Saw |
| 82 | 6/26/2007 | 2:00 PM  | A | Folding Ladder |

All seizure locations are identified letter coded rooms within 300 E. 33rd Street, Apartment 4N, New York, NY

EXHIBIT B

EXHIBIT B



**CASI Bank Accounts Source of Funds for Year 1
(10/1/2001 -9/30/2002)**

※ NIST ATP Gra[nt]

GOVERNMENT EXHIBIT 112
07 Cr. 541 (RPP) (ID)



**CASI Bank Accounts Source Of Funds Year 2
(10/1/2002 -6/30/2003)**

- NIST ATP Grant
- Miscellaneous Deposits

GOVERNMENT EXHIBIT
113
07 Cr. 541 (RPP) (ID)

EXHIBIT C







| Amendment # 2 - 1/4/02 | | 10/1/2001 - 10/10/2002 | | |
|---|---|---|---|---|
| | Budget | CASI Spent | Difference | % Difference |
| Subcontractor | $250,000 | $75,962 | (174,038) | -69.62% |
| Dr. Karron Salary | $175,000 | $200,488 | 25,488 | 14.56% |
| Other Employees' Salaries | $150,000 | $141,922 | (8,078) | -5.39% |
| Equipment | $110,000 | $189,819 | 79,819 | 72.56% |
| Dr. Karron Fringe Benefits | $59,500 | $19,163 | (40,337) | -67.79% |
| Other Employees' Fringe Benefits | $51,000 | $20,222 | (30,778) | -60.35% |
| Travel | $20,000 | $10,914 | (9,086) | -45.43% |
| Materials / Supplies | $11,000 | $26,364 | 15,364 | 139.68% |
| Audits | $10,000 | $5,000 | (5,000) | -50.00% |
| Dr K Rent | $0 | $60,000 | 60,000 | - |
| Other- (Bookkeeping / Auto Exp / Bank Processing Consultants / Lawyers / Dues Subscriptions | $0 | $43,592 | 43,592 | - |
| Utilities | $0 | $16,341 | 16,341 | - |
| Dr. Karron Fringe Benefits - Not Allowed | $0 | $4,081 | 4,081 | - |
| Other Employees' Fringe Benefits - Not allowed | $0 | $5,751 | 5,751 | - |
| Capital Improvement | $0 | $11,248 | 11,248 | - |
| Cleaning - D. Ferrand | $0 | $5,019 | 5,019 | - |
| Meals | $0 | $1,936 | 1,936 | - |
| Total Direct Costs | $836,500 | $837,822 | | |

GOVERNMENT EXHIBIT 114  07 Cr. 541 (RPP) (ID)



Budget for 9 months of Year 2
(10/1/2002 - 6/30/2003)



Actual for 9 Months of Year 2
(10/11/2002-6/30/2003)

- 1 - Other Employees' Salaries
- 2 - Dr. Karron Salary & Net Withdrawals In Budget
- 3 - Dr. Karrons' Fringe Benefits - Emp Tax / Insurance / Workers Comp
- 4 - Other Emp Fringe Benefits - Emp Tax / Insurance/ Workers Comp
- 5 - Audits
- 6 - Equipment Cost In Budget
- 7 - Subcontractor
- 8 - Travel

| Amendment # 2 - 1/4/02 | 10/11/2002 - 6/30/2003 | | | |
|---|---|---|---|---|
| | Budget | CASI Spent | Difference | % Difference |
| Other Employees' Salaries | $150,000 | $148,479 | (1,521) | -1.01% |
| Dr. Karron Salary | $131,250 | $146,162 | 14,912 | 11.36% |
| Subcontractor | $110,000 | $6,100 | (103,900) | -94.45% |
| Other Employees' Fringe Benef | $51,000 | $13,815 | (37,185) | -72.91% |
| Dr. Karron Fringe Benefits | $44,625 | $19,890 | (24,736) | -55.43% |
| Equipment | $9,000 | $99,169 | 90,169 | 1001.88% |
| Travel | $9,000 | $3,445 | (5,555) | -61.72% |
| Audits | $0 | $10,000 | 10,000 | - |
| Other- (Bookkeeping / Auto Exp / Bank Processing Consultants / Lawyers / Dues Subscriptions | $0 | $31,625 | 31,625 | - |
| Capital Improvement | $0 | $20,118 | 20,118 | - |
| Utilities | $0 | $17,570 | 17,570 | - |
| Supply Cost | $0 | $8,803 | 8,803 | - |
| Other Employees' Fringe Benef | $0 | $3,792 | 3,792 | - |
| Cleaning - D. Ferrand | $0 | $3,200 | 3,200 | - |
| Meals | $0 | $2,966 | 2,966 | - |
| Dr K Rent | $0 | $2,000 | 2,000 | - |
| Dr Karron Fringe Benefits -Not | $0 | $1,350 | 1,350 | - |
| Total Direct Costs | $504,875 | $538,483 | | |

10 % Adjustment
**TOTAL RED $196,504**



$341,978

GOVERNMENT EXHIBIT 115  07 Cr. 541 (RPP) (ID)